# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

BRENDA M. WHITE,  )
                  )
      Plaintiff,  )
                  )
      v.  )    Case No. CIV-17-249-SPS
                  )
COMMISSIONER of the Social  )
Security Administration,  )
                  )
      Defendant.  )

## OPINION AND ORDER

The claimant Brenda M. White requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was thirty-eight years old at the time of the administrative hearing (Tr. 43). She has a high school equivalent education and has worked as an institutional cook, breakfast cook, and pizza deliverer (Tr. 44, 76-77). The claimant alleges that she has been unable to work since October 25, 2013, due to depression, anxiety, degenerative disc disease, bone spurs, diabetes, high blood pressure, carpal tunnel syndrome, and problems with her shoulder and arm (Tr. 247, 305).

**Procedural History**

On November 20, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 247-56). Her applications were denied. ALJ Michael Harris conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 19, 2016 (Tr. 21-34). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) except she could only occasionally climb

ramps or stairs, balance, stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, or scaffolds (Tr. 26). The ALJ further found that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 26). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e.g.*, small parts assembler, lens inserter, and cuff folder (Tr. 32-34).

### Review

The claimant contends that the ALJ erred by failing to properly: (i) account for her carpal tunnel syndrome in formulating the RFC, and (ii) evaluate her subjective statements. The Court agrees, and the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of obesity, degenerative disc disease, diabetes mellitus, affective disorder, anxiety disorder, and substance addiction disorder and the nonsevere impairment of hypertension (Tr. 23-24). The relevant medical evidence reveals that the claimant regularly consulted with providers at the Chickasaw Nation Medical Center between January 2012 and October 2015 (Tr. 377-576, 820-68, 1013-40, 1307-16, 1345-56). Her relevant diagnoses include chronic low back pain, major depressive disorder, anxiety disorder, diabetes, chronic pain syndrome, lumbago, bilateral hand median nerve neuropathy, and carpal tunnel syndrome (Tr. 377-576, 820-68, 1013-40, 1307-16, 1345-56).

On August 19, 2014, the claimant presented to Dr. Brian Snell, a neurosurgeon, for evaluation of her back pain and leg pain (Tr. 774-77). On physical examination, Dr. Snell found the claimant's motor strength, light touch sensation, and reflexes were normal in her lower extremities (Tr. 776). He noted that a straight leg maneuver caused pain in her right leg but was negative on the left (Tr. 776). Dr. Snell assessed the claimant with multifactorial lumbar spinal stenosis most notable at L4-5, less so at L3-4, and less even more at L5-S1 with symptoms most suspicious for lumbago and L5 type radiculopathy on the right, and recommended a lumbar epidural steroid injection, which ultimately provided only three or four days of relief (Tr. 776, 778). On November 14, 2014, the claimant underwent a right L4-5 laminotomy, medial facetectomy, and foraminotomy (Tr. 811-13). At a follow-up appointment on December 11, 2014, the claimant reported an eighty-five percent reduction in her right leg pain (Tr. 782). On June 9, 2015, the claimant presented to Dr. Snell and reported an exacerbation of her back pain and leg pain after she tried to catch a falling television (Tr. 1336-38). She indicated the pain was not as severe as her pain prior to surgery (Tr. 1336).

As to the claimant's carpal tunnel syndrome, the record reveals the claimant reported bilateral wrist pain "for years" to nurse practitioner Tracy Langley on October 23, 2014 (Tr. 850-54). Ms. Langley noted the claimant had a positive Phalen's test and Tinel's test bilaterally, greater on the right than the left (Tr. 853). X-rays of the claimant's wrists taken the same day were unremarkable (Tr. 911). At a post-op appointment on December 11, 2014, with Dr. Snell following her back surgery, the claimant mentioned she was concerned about numbness and tingling in her hands (Tr. 782). Dr. Snell found a positive

Phalen's sign and Tinel's sign, right greater than left, in her wrists bilaterally and altered light touch in her fingers on her right hand (Tr. 782). He referred the claimant for an EMG, and limited her lifting, pushing, and pulling to fifteen pounds until her follow-up visit in four weeks (Tr. 782).

The claimant presented to Dr. Charboneau, an orthopedist, on January 26, 2015, and reported bilateral hand numbness for the previous six or seven years (Tr. 1013-14). Dr. Charboneau found that the claimant had worsening hand numbness with Phalen testing and had numbness and tingling over her median nerve distribution, but no pain with wrist movement (Tr. 1013). He recommended a right-hand carpal tunnel release, which he performed on February 12, 2015 (Tr. 1013, 1023-24). At a follow-up appointment on February 25, 2015, the claimant's night pain had resolved and her sensation had returned (Tr. 1032).

At the administrative hearing, the claimant testified that she was unable to work due to constant low back pain that increasingly radiates down her right leg depending on her level of activity (Tr. 53). She stated that she is able to relieve her leg pain after fifteen or twenty minutes of lying down with a pillow between her legs (Tr. 54). She further testified that she also experiences numbness in her right thigh all day long, and daily cramps in her back (Tr. 55). She indicated that her medications help her pain, but that she is never pain free (Tr. 61). The claimant stated that she could sit for ten or fifteen minutes before needing to lie down, stand for ten or fifteen minutes before needing to sit or lie down, walk one hundred yards, and lift eight pounds, but could not squat or bend (Tr. 70). As to her carpal tunnel syndrome, the claimant testified that her surgery helped her right hand, but that she

still experiences shooting pain in her right hand after doing hours of school work, and that she still has tingling and numbness in her left hand (Tr. 57-58). Regarding her manipulative capabilities, the claimant stated that she could hold a coffee cup with her right hand, could turn a door knob with either hand, could not remove a cap from a two-liter bottle with either hand, and could not pick up small objects like coins or paperclips with her left hand (Tr. 59-60).

In his written opinion, the ALJ summarized the claimant's testimony and the medical record. In discussing the medical evidence at step four, the ALJ noted the claimant's treatment for carpal tunnel syndrome, but did not include any related limitations in the RFC or explain why no such limitations were necessary, and never made a severity determination (Tr. 28-30). He gave great weight to the state agency physicians' opinion that the claimant could perform sedentary work with occasional postural limitations, but further limited the claimant to never climbing ladders, ropes, or scaffolds in light of an August 2015 lumbar MRI (Tr. 31). In discussing the claimant's subjective statements, the ALJ concluded that the claimant was not entirely credible because: (i) she was enrolled in an online college program, (ii) her back surgery and carpal tunnel surgery successfully alleviated her symptoms, and (iii) she was found to have equal grip strength on one occasion prior to her carpal tunnel surgery (Tr. 31).

The Court first notes that the ALJ is required to consider all of a claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's]

impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523). *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2004) ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Here, the ALJ noted the claimant's treatment for carpal tunnel syndrome, but did not include any related limitations in the RFC or explain why no such limitations were necessary, particularly as to the left wrist which was never treated surgically, which means that the RFC does not wholly account for the claimant's impairments. This was error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). Furthermore, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC. *See Hill v. Astrue*, 289 Fed. Appx. at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those

'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

The claimant also asserts that the ALJ erred in evaluating her subjective complaints. At the time of the ALJ's opinion, the prevailing standard was that deference must be given to an ALJ's evaluation of a claimant's subjective symptoms unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A subjective symptom analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (*superseded by* Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (effective Mar. 28, 2016)). The standard for evaluating credibility, as noted above, was then superseded by Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (October 25, 2017). Regardless of which standard is applied, the ALJ's credibility determination fell below these standards.

First, the ALJ neither cited to nor discussed the factors set forth in Social Security Ruling 16-3p and 20 C.F.R. §§ 404.1529, 416.929, and further failed to apply those factors

to the evidence.[2]  He was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient, *See* Soc. Sec. Rul. 16–3p at *10, 2017 WL 5180304 (October 25, 2017), and here the ALJ did not even do that.

Additionally, some of the specific reasons given by the ALJ for finding the claimant's subjective complaints were not consistent with the medical and other evidence in the record are not entirely supported by the record.  For example, the ALJ found that the claimant reported having good feeling in her fingers in March 2015, but ignored that she only had surgery on her right hand and continued to report numbness and tingling in her left hand (Tr. 1349).  Similarly, the ALJ noted the claimant reported continued improvement in her ability to stand and control her back pain in March 2015, but ignored that a June 2015 treatment note indicated an exacerbation of her back pain, some hyperesthesia in her right leg and calf, pain with a straight leg raise at ninety degrees on the right, and a referral to physical therapy (Tr. 1338).  Further examination of such "perceived" inconsistencies indicates that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not support his conclusions.  *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision,

---

[2]  The factors to consider in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms are:  (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations.  Soc. Sec. Rul. 16-3p, 2017 WL 5180304 at *7-8 (October 25, 2017).

the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Because the ALJ failed to properly account for *all* the claimant's impairments at step four and failed to properly evaluate the her subjective symptoms, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 6th day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**